IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| HAPPY JACK'S PETROLEUM, INC., | ) | CASE NO. BK16-41395 |
| | ) | |
| Debtor(s). | ) | CH. 7 |

<u>ORDER</u>

Hearing was held in Omaha, Nebraska, on January 6, 2020, on Hansen's Petroleum Products, Inc.'s motion for disgorgement (Fil. No. 351) and objections by the Chapter 7 trustee (Fil. No. 357), Adams Bank & Trust (Fil. No. 359), and the debtor (Fil. No. 360). Zachary W. Lutz-Priefert and Frederick D. Stehlik appeared for the debtor, Philip M. Kelly appeared as the Chapter 7 trustee, James Overcash appeared for the Chapter 7 trustee, Douglas E. Quinn appeared for Hansen's Petroleum Products, and Robert Reynolds and Michael Samuelson appeared for Adams Bank & Trust. Arguments were heard, evidence was received, and the movant was given additional time to supplement its evidence. That declaration has been submitted and the matter is ready to be decided.

For the following reasons, the motion is denied.

### *BACKGROUND*

Happy Jack's Petroleum operated a convenience store, truck stop, and bulk fuel business along Interstate 80 in western Nebraska. It filed this bankruptcy case in September 2016 as a Chapter 11. Thereafter, the debtor moved for authority to incur administrative expense super-priority debt with its fuel supplier, Hansen's Petroleum Products. The amended motion requested authority "to incur debt with priority over any and all other administrative expenses of the kind specified in §§ 503(b) or 507(b) for debt so incurred for the supply of fuel that will be sold by Happy Jack's to customers for a contemporaneous, fair-value payment from the customers[.]" Fil. No. 49 at 2. Happy Jack's reached a stipulation with the only creditor to have filed an objection to the original motion, and no objections were filed to the amended motion, so the court granted it in early December 2016 (Fil. No. 55).

The debtor struggled to put together a viable Chapter 11 plan and disclosure statement, and ultimately moved to convert the case to Chapter 7 in July 2017. No party objected, and that motion was granted in September 2017. The Chapter 7 trustee initially operated the business while attempting to sell it as a going concern, but Happy Jack's secured lender wanted to liquidate the assets and recoup as much as it could. The debtor's personal and real property was eventually sold, with most of the proceeds going to Adams Bank & Trust. The bank agreed to pay fees and expenses for the trustee, trustee's counsel, and a certified public accountant from the sale proceeds. The bankruptcy estate is administratively insolvent.

In the meantime, Hansen's filed an application for allowance and payment of its super-priority administrative expense claim of approximately $875,000 on November 17, 2017 (Fil. No. 177). Numerous objections were received and the matter was set for trial. Before the trial was held, the parties agreed to bifurcate the legal issue concerning the effect post-conversion of the order granting super-priority status to Hansen's claim, so the court ruled in November 2018, holding that "(i) Hansen's Petroleum Products, Inc.'s super-priority claim under § 364(c)(1) shall have priority over all § 503(b) claims whenever and however created and (ii) the claim of Hansen Petroleum Products, Inc. under § 364(c)(1) is an unsecured claim." Fil. No. 287 at 4.

Hansen's then filed a motion for leave to pursue a surcharge of Adams Bank & Trust's collateral (Fil. No. 301). The parties again agreed to bifurcate the motion and asked the court to determine whether Hansen's had standing to pursue a surcharge under 11 U.S.C. § 506(c). The court ruled Hansen's did not have such standing, finding that Hansen's had not established that the trustee was unjustified in refusing to pursue the claims, or that its claims were colorable. Fil. No. 332. The court further observed:

> It is undisputed that Hansen's has been paid for all fuel supplied during the Chapter 7 portion of this case. Previously, during the Chapter 11 portion of this case, Hansen's agreed to provide fuel to the debtor on an unsecured basis in exchange for a super-priority claim under § 364(c)(1). It did so voluntarily and, as noted in this Court's Order of November 7, 2018 (Fil. #287), after Debtor expressly advised Hansen's that it could not secure the obligation to pay. Hansen's took a risk that the reorganization would be successful. It was not. As such, Hansen's cannot now come back and secure its obligation through the back door with a surcharge request.

Fil. No. 332 at 4.

*Disgorgement Motion*

Hansen's has now filed a motion requesting disgorgement of all administrative expenses paid in the Chapter 7 and Chapter 11 phases of the case so that the funds might be applied first to Hansen's super-priority claim (Fil. No. 351) in accordance with the Bankruptcy Code's distribution scheme. This request drew objections from the Chapter 7 trustee, the debtor, and Adams Bank & Trust. The primary argument in opposition to the motion concerns the use of the bank's collateral to pay the professional and administrative fees incurred in the Chapter 7 case. The trustee states that no unsecured assets were used to pay expenses, so any amounts required to be disgorged would belong to the bank and not to Hansen's.

The objecting parties also argue that Hansen's should have tried to collect earlier for the fuel it was delivering to the debtor, and it should have objected to the trustee's request to pay fees from the bank's liquidated collateral as well as to the various fee requests that were filed throughout the case.

At the hearing, Hansen's counsel noted that the court order denying Hansen's request for a surcharge against the bank's collateral was based in large part on the finding that the trustee's refusal to pursue such claims was not unjustified, but the trustee admittedly was paid from the bank's collateral, so his independent judgment might have been compromised. If this had been the sole basis for denying the surcharge motion, the trustee's potential conflict may have carried more weight in the decision. However, that was not the only reason the motion was denied. The Court also noted that Hansen's offered no evidence that it provided a benefit to the bankruptcy estate. Moreover, Hansen's knew it was taking a risk by gambling that the debtor would be successful and pay for the fuel it purchased. Hansen's willingly agreed to provide the fuel even after being advised that the debtor could not provide security for the debt. The surcharge request seemed like an attempt for a "do-over" to rescue itself from a bad decision.

At the end of the hearing on the disgorgement motion, the Court instructed Hansen's to submit supplemental affidavit evidence setting forth for both the Chapter 11 period and the Chapter 7 period the fuel supplied, the invoice amounts and dates, and the payment dates, including any payments that bounced. The Court indicated it wanted this information to see the "big picture" of what happened and when it happened with regard to the supply and payment for fuel.

Hansen's did submit the Declaration of Susan Hansen on January 28, 2020 (Fil. #371). Unfortunately, instead of providing a chart or summary that clearly sets forth the information the Court requested, the declaration simply says, in part, that from "May through November of 2017, records were generated by Hansen's Petroleum with regard to its purchases of fuel from Sinclair Oil Corporation, which was in turn sold by Hansen's Petroleum to Happy Jack's." The declaration then went on to attach records for various time periods, which records consist of invoices from Sinclair as seller to Larry L. Hansen as purchaser (with handwritten notations thereon) and copies of numerous NSF checks issued by Happy Jack's to Hansen's. The declaration fails to identify *any* invoice pertaining to a sale *by* Hansen's *to* Happy Jack's. Further, the NSF check copies fail to match up to any invoice. The declaration also fails to explain any of the foregoing. The declaration does, however, conclude with an assertion that Hansen's is owed $743,488.30 for that May through November, 2017 time period.

## *DISCUSSION*

The timeline of pertinent events in this case is as follows:

–September 16, 2016.  Chapter 11 filed.

–December 2, 2016.  Order granting Amended Motion to incur debt and grant Hansen's a superpriorty claim. (Fil. #55).

–September 5, 2017.  Order granting motion to convert to Chapter 7 (Fil. #126).

–October 30, 2017.  Order granting Trustee's motion to operate business (Fil. #164).

–November 17, 2017.  Hansen's Application for Payment of Super priority expense. (Fil. #177).

–November 30, 2017.  Trustee's motion to approve agreement with Secured Creditor (Fil. #181).

–December 22, 2017.  Order granting Trustee's motion (Fil. #187).

–January 17, 2018.  Final fee application by debtor's attorneys (Fil. #205).

–March 8, 2018.  Order approving final fee application. (Fil. #226).

*Claim amounts asserted by Hansen's.*

When Hansen's filed its application for payment of its super priority claim on November 17 of 2017, it asserted a claim in the amount of $875,128.64. Subsequently, in support of its application for payment, Hansen's submitted the declaration of Larry Hansen (Fil. #197) dated January 10, 2018, which asserted a balance due in the amount of $437,485.66. Now, in the declaration of Susan Hansen filed on January 28, 2020, Hansen's claims a balance due of $743,488.30. Hansen's has not provided any explanation or reconciliation regarding those varying claim amounts. The Court has set Hansen's application for payment of its super priority claim for trial on several occasions, but each time the parties have requested deferral of the application pending resolution of threshold issues–first, the issue of the priority of Hansen's claim versus other administrative claims, then the motion for surcharge, and finally this motion for disgorgement. Accordingly, the amount owed to Hansen's has never been decided.

Even if the various claims by Hansen's could be reconciled, it is not necessarily entitled to a super priority claim for the entire amount of fuel it supplied, less payments. When the debtor filed its motion to incur debt and grant Hansen's a super priority claim, a creditor filed an objection. The objection was based on the fact that the debtor had entered into a number of pre-paid fuel contracts pre-petition. So, the debtor had already been paid for fuel that it owed to customers. If the post-petition fuel purchases from Hansen's were used to supply fuel to the pre-paid customers, the bankruptcy estate would not be receiving any income in exchange for that fuel. For that reason, the motion was amended to include a provision that the super priority claim of Hansen's "shall only attach for the supply of fuel that will be sold by the Debtor to customers for a contemporaneous, fair-value payment from the customers." Since the amount of Hansen's claim has not yet been litigated, no evidence has been submitted as to the disposition of any of the fuel supplied by Hansen's during the Chapter 11 portion of the case.[1]

The Chapter 7 Trustee has, however, presented evidence on multiple occasions stating that he has paid for all fuel supplied during the Chapter 7 phase of the case and while he operated the

---

[1]Specifically, no evidence has been provided as to whether the Chapter 11 debtor used any of the fuel supplied by Hansen's to satisfy pre-petition fuel contracts. If the debtor did so, Hansen's is not entitled to a super priority claim for that fuel.

business. (Fil. #200, Declaration of Phil Kelly; Fil. #373, Affidavit of Phil Kelly). Hansen's has not presented any evidence disputing the assertions of the Trustee. Therefore, for purposes of this Order, the Court will assume that the claim of Hansen's (whatever it may be) arose during the Chapter 11 phase of the case and before the Chapter 7 Trustee took over operation of the business.

### *Disgorgement Standard.*

Requests for disgorgement of fees or other payments for administrative expenses typically arise when a case is found to be administratively insolvent after some administrative expenses have already been paid. Some courts have found disgorgement to be mandatory in order to comply with the distribution scheme of the Bankruptcy Code. *See, e.g.*, *Specker Motor Sales Co. v. Eisen,* 393 F.3d 659, 664 (6th Cir.2004). Others have found that it is a matter of discretion, particularly in the absence of a statutory provision regarding disgorgement. *In re Chute,* 235 B.R. 700, 701–02 (Bankr. D. Mass.1999) (collecting cases). This has often been referred to as the majority view. There are many other views in between those two.

With this Order, the Court will not try and re-create the wheel with a fresh analysis of the law related to disgorgement. Many courts have already done so. *See, In re Headlee Mgt. Corp.,* 519 BR 452 (Bankr. S.D.N.Y. 2014)(compiling different cases and viewpoints regarding disgorgement). Instead, the Court will simply note that the concept of disgorgement is, at its core, an equitable remedy. It is not statutory–there is no mention of it in the Bankruptcy Code. Therefore, it is an equitable remedy created to reverse something that has already happened in order to be consistent with a statutory scheme or to get to the "right" result. Accordingly, this Court agrees with those courts that have found disgorgement to be a matter of discretion, to be exercised based on the unique facts and circumstances of the case.

### *Chapter 7 Administrative Expenses.*

The pending motion asserts that since this case is administratively insolvent, all administrative claimants should be required to disgorge any payments they received since Hansen's has a super priority claim to those funds. Because this is a converted case, there are two separate groups of administrative expense claims – those from the Chapter 11 case and those from the Chapter 7 case. The Chapter 7 administrative expenses include professional fees for the trustee, his counsel, and an accounting firm. The fee requests were approved and paid from the proceeds of the bank's collateral pursuant to the unopposed agreement between the bank and the trustee for payment of such expenses (Fil. No. 181).

Hansen's argues that regardless of where the money comes from in the first place, the order granting it a super priority claim is clear–Hansen's claim is prior to all administrative claims under section 503(b). But, that argument fails to recognize the unique circumstances of the Chapter 7 phase of this case and the fact that Hansen's claim is unsecured. Here, the only funds used to pay the Chapter 7 trustee and his professionals were generated from the sale of the collateral of Adams Bank. The trustee and Adams Bank entered into a specific agreement to liquidate the bank's collateral and agreed that the expenses for doing so would be paid from that collateral. The funds

to pay those expenses belonged to the bank–a secured creditor. It allowed those funds to be used to liquidate its collateral. Disgorgement would simply return those funds to the secured creditor. The funds would not, in any event, be available for payment to Hansen's.

Hansen's had the opportunity to object to the bank's arrangement with the trustee. It failed to do so. In fact, in response to a motion by the trustee to make a partial distribution of some of the funds generated under the trustee's agreement with the bank, Hansen's went so far as to say that "it has no objection to the payment of the trustee's fees as requested" in the motion (Fil. #246). In sum, Hansen's has failed to articulate any legal right or claim to the funds it seeks to have disgorged by the Chapter 7 administrative claimants. There is simply no basis now to disturb the court-approved arrangement between the trustee and Adams Bank, or the payments made thereunder.

Accordingly, the motion for disgorgement should be denied as to the Chapter 7 administrative expenses.

*Chapter 11 Administrative Expenses.*

The Chapter 11 administrative expenses include professional fees for Happy Jack's counsel and for certified public accountants hired by the debtor in possession. Pursuant to procedures followed by the debtor (described in Fil. No. 11 and approved at Fil. No. 44), payment of 80 percent of professionals' fees and reimbursement of expenses occurred on a monthly basis, subject to the approval of periodic interim fee applications, at which point the remaining 20 percent hold-back would be paid.

When the case was converted to Chapter 7, counsel for the debtor submitted a final application for Chapter 11 fees and expenses (Fil. No. 205). In that application, counsel sought final approval of $57,144.79 in compensation and expenses for the period of September 1, 2016, through September 5, 2017. Secured creditors Adams Bank & Trust and Great Western Enterprises objected on the grounds that administrative expenses cannot be charged against the collateral of a secured creditor. Notably, Hansen's did not file an objection. Hansen's failure to file an objection to the fee application is notable since the fee application was filed January 17, 2018, a full two months *after* Hansen's began seeking payment of its claim. In other words, long before the final fee application was approved for debtor's counsel, Hansen's knew that debtor had been bouncing checks and was not paying its debt to Hansen's. In fact, based on the affidavit of Susan Hansen (Fil. #371), debtor had been bouncing checks to Hansen's since at least July of 2017 and debtor was delinquent in payment for invoices dating to May of 2017. Despite that knowledge, Hansen's did not object to the fee application. Hansen's also did not object to the payment of any other chapter 11 administrative expenses.

The Court wants to be clear that the granting of Hansen's super-priority status was not intended to be meaningless. However, when it collides with the rights of other administrative claimants who have already been paid after notice and opportunity to object – and others who were paid from the collateral of a secured creditor because the estate has no unsecured assets – then something has to give. Hansen's supplied the debtor with fuel which arguably helped keep the

debtor in business for a period of time.[2] The debtor paid for some of that fuel late and by writing insufficient-funds checks. Despite the knowledge that debtor was not paying according to terms, and was continually issuing bad checks, Hansen's continued to provide fuel, adding to the amount of their priority claim. At the same time, professionals engaged by the estate were performing their work, expecting and seeking administrative priority payment from the estate. Hansen's did not object to these claims for payment, nor did it make the claimants aware it was continuing to accrue a super-priority claim.

To be clear, this Court is not saying that a cause of action for disgorgement may never exist. In fact, caselaw from this jurisdiction indcates that such a cause of action may exist under appropriate circumstances. *See, Stumpf v. Creel & Atwood, P.C. (In re Lockwood Corp.),* 216 B.R. 628, 636-37 (Bankr. D. Neb. 1997). Instead, this ruling is based on the unique facts and circumstances of this case. It simply would be inequitable to allow Hansen's to come in at this late stage to seek disgorgement of duly earned fees from estate professionals. Hansen's had the ability to control this outcome. It could have stopped supplying fuel as soon as debtor defaulted on payment terms. That would have greatly reduced the claim of Hansen's. It also could have objected to payment of administrative claims as soon as it knew that the debtor was not in compliance with payment terms. It did not do those things. Hansen's took a risk that the debtor would successfully reorganize. It gambled and lost.

Therefore, the motion for disgorgement should be denied as to the Chapter 11 administrative expenses.

IT IS ORDERED: Hansen's Petroleum Products, Inc.'s motion for disgorgement (Fil. No. 351) is denied.

DATED: January 30, 2020.

BY THE COURT:

/s/Judge Thomas L. Saladino
Chief United States Bankruptcy Judge

Notice given by the Court to:
    *Douglas Quinn
    Zachary W. Lutz-Priefert
    Frederick D. Stehlik
    James Overcash
    Philip M. Kelly

---

[2] Whether that result–staying in business–benefitted the estate or the creditors remains an open question. Ultimately, the debtor ceased business operations and was liquidated. It was not sold as a going concern.

    Robert Reynolds
    Michael Samuelson
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.